CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
Telephone: (702) 434-8282
Facsimile: (702) 434-1488
Christian@CMTAlaw.com
Sarah@CMTAlaw.com
Lindsay@CMTAlaw.com
*Attorneys for Plaintiffs*

**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| S.H., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SAM ALDABBAGH d/b/a DIAMOND INN MOTEL; MARDI GRAS INN LIMITED PARTNERSHIP d/b/a MARDI GRAS INN; DOES 1 through 10; ROE CORPORATIONS 13 through 20; and ABC LIMITED LIABILITY COMPANIES 21 through 30,<br><br>Defendants. | CASE NO: 2:25-cv-02220<br><br>**STIPULATION AND ~~PROPOSED~~ ORDER FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

Plaintiff, S.H. ("Plaintiff"), by and through their counsel of record, Christian M. Morris, Esq., Sarah E. DiSalvo, Esq. and Lindsay N. Roginski, Esq., and Defendants, SAM ALDABBAGH dba DIAMOND INN MOTEL and MARDI GRAS INN LIMITED PARTNERSHIP dba MARDI GRAS INN, ("Defendants"), by and through their respective counsel of record, hereby stipulate and agree as follows:

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

1. Plaintiff seeks leave to file an Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2), for the purpose of amending the parties as follows:

   a. To correct Defendants, MARDI GRAS INN LIMITED PARTNERSHIP dba MARDI GRAS INN, with the proper entity name MARDI GRAS INN LIMITED PARTNERSHIP dba MARDI GRAS HOTEL & CASINO.

2. The Parties agree that Plaintiff may file the proposed Amended Complaint, attached hereto as **Exhibit 1**.

3. This stipulation is submitted pursuant to Federal Rule of Civil Procedure 15(a)(2), which provides that a party may amend its pleading with the opposing party's written consent or the court's leave, and that "leave shall be freely given when justice so requires."

4. This stipulation is made in good faith and not for the purpose of delay.

DATED this 4th day of August 2026.

**CHRISTIAN MORRIS TRIAL ATTORNEYS**

/s/ *Sarah E. DiSalvo*

_______________________________
CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
2250 Corporate Circle Suite 390
Henderson NV 89074
*Attorney for Plaintiff*

GORDON REES SCULLY MANSUKHANI

*/s/ Robert Schumacher*

_______________________________
ROBERT SCHUMACHER, ESQ.
Nevada Bar No. 7504
300 S. 4th St., Suite 1550
Las Vegas, NV 89101
*Attorney for Defendant Sam Aldabbagh dba Diamond Inn Motel*

PYATT SILVESTRI

*/s/ James P. Silvestri*

________________________________

JAMES P.C. SILVESTRI, ESQ.
Nevada Bar No. 3603
7670 W. Lake Mead Blvd., Suite 250
Las Vegas, Nevada 89128
*Attorneys for Defendant Mardi Gras Inn Limited Partnership dba Mardi Gras Inn*

**ORDER**

IT IS SO ORDERED.

________________________________
UNITED STATES MAGISTRATE JUDGE

DATED 8/5/2026

*Respectfully Submitted By:*
**CHRISTIAN MORRIS TRIAL ATTORNEYS**

/s/ *Sarah E. DiSalvo*

________________________________

CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
2250 Corporate Circle Suite 390
Henderson NV 89074
*Attorney for Plaintiff*

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

Outlook

## RE: S.H. v. Sam Aldabbagh, et al SAO Amend Complaint

**From** Barbara Abbott <babbott@pyattsilvestri.com>
**Date** Thu 2026-07-02 8:11 AM
**To** Nicole DuBois <NicoleD@cmtalaw.com>; James Silvestri <jsilvestri@pyattsilvestri.com>; Robert Schumacher <rschumacher@grsm.com>
**Cc** Sarah DiSalvo <Sarah@cmtalaw.com>; Lindsay Roginski <Lindsay@cmtalaw.com>; David Schooler <dschooler@grsm.com>; Paul Buchel <pbuchel@grsm.com>; Cristina Pagaduan <cpagaduan@grsm.com>; Andrea Montero <amontero@grsm.com>; Ashley Luto <ashley@cmtalaw.com>

Nicole: You have Jim Silvestri authorization to affix his electronic signature to the SAO to file 2nd Amended Complaint.

*Barbara Abbott*
***Legal Assistant to James P.C. Silvestri, Esq.***

PYATT SILVESTRI
A PROFESSIONAL LAW CORPORATION

**7670 Lake Mead Boulevard, Suite 250**
**Las Vegas, Nevada 89128**
**Telephone: (702) 383-6000**
**Facsimile: (702) 477-0088**
**babbott@pyattsilvestri.com**
**www.pyattsilvestri.com**

**The information contained in this communication may be confidential or legally privileged and is intended only for the recipient named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please immediately advise the sender and delete the original and any copies from your computer system.**

**From:** Nicole DuBois <NicoleD@cmtalaw.com>
**Sent:** Tuesday, June 30, 2026 12:04 PM
**To:** James Silvestri <jsilvestri@pyattsilvestri.com>; Robert Schumacher <rschumacher@grsm.com>
**Cc:** Sarah DiSalvo <Sarah@cmtalaw.com>; Lindsay Roginski <Lindsay@cmtalaw.com>; David Schooler <dschooler@grsm.com>; Barbara Abbott <babbott@pyattsilvestri.com>; Paul Buchel <pbuchel@grsm.com>; Cristina Pagaduan <cpagaduan@grsm.com>; Andrea Montero <amontero@grsm.com>; Ashley Luto <ashley@cmtalaw.com>
**Subject:** S.H. v. Sam Aldabbagh, et al SAO Amend Complaint

Good afternoon,

Please see the attached SAO and 2nd amended Complaint to correct Mardi Gras' correct entity name for your review. If you are amenable, please confirm we may e-sign on your behalf.

*Best regards,*
*Nicole DuBois*
*Paralegal*

*"Kindness is the culture. Justice is the purpose."*

CHRISTIAN MORRIS
TRIAL ATTORNEYS

**2250 Corporate Circle Suite 390**
**Henderson NV 89074**
**Direct Tel: 702-763-6904**
**Office Fax: 702-434-1488**
**Office Tel: 702-434-8282**

Nicoled@cmtalaw.com

CMTrialAttorneys.com

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

Outlook

## RE: S.H. v. Sam Aldabbagh, et al SAO Amend Complaint

**From** Paul Buchel <pbuchel@grsm.com>
**Date** Tue 2026-08-04 12:35 PM
**To** Nicole DuBois <NicoleD@cmtalaw.com>; Sarah DiSalvo <Sarah@cmtalaw.com>; Barbara Abbott <babbott@pyattsilvestri.com>; James Silvestri <jsilvestri@pyattsilvestri.com>; Robert Schumacher <rschumacher@grsm.com>
**Cc** Lindsay Roginski <Lindsay@cmtalaw.com>; David Schooler <dschooler@grsm.com>; Cristina Pagaduan <cpagaduan@grsm.com>; Andrea Montero <amontero@grsm.com>; Ashley Luto <ashley@cmtalaw.com>

Good afternoon,

Please affix Robert Schumacher's signature to the SAO to amend the Complaint.

Thank you.

---

**PAUL BUCHEL**
Associate

Gordon & Rees, Scully Mansukhani - Your 50 State Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE LAW FIRM™**

**E:** pbuchel@grsm.com | grsm.com
80 S. 8th Street, Suite 3850, Minneapolis, MN 55402
vCard

---

**From:** Nicole DuBois <NicoleD@cmtalaw.com>
**Sent:** Tuesday, August 4, 2026 11:08 AM
**To:** Sarah DiSalvo <Sarah@cmtalaw.com>; Barbara Abbott <babbott@pyattsilvestri.com>; James Silvestri <jsilvestri@pyattsilvestri.com>; Robert Schumacher <rschumacher@grsm.com>
**Cc:** Lindsay Roginski <Lindsay@cmtalaw.com>; David Schooler <dschooler@grsm.com>; Paul Buchel <pbuchel@grsm.com>; Cristina Pagaduan <cpagaduan@grsm.com>; Andrea Montero <amontero@grsm.com>; Ashley Luto <ashley@cmtalaw.com>
**Subject:** Re: S.H. v. Sam Aldabbagh, et al SAO Amend Complaint
**Importance:** High

Mr. Buchel,

I just left a voicemail with your office regarding the below. Please advise if we may affix your e-signature to the SAO to amend the Complaint.

# EXHIBIT 1

2nd Amended Complaint

EXHIBIT 1

CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
T: (702) 434-8282
F: (702) 434-1488
Christian@CMTAlaw.com
Sarah@CMTAlaw.com
Lindsay@CMTAlaw.com
*Attorneys for Plaintiff*

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| S.H., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SAM ALDABBAGH d/b/a DIAMOND INN MOTEL; MARDI GRAS INN LIMITED PARTNERSHIP d/b/a MARDI GRAS HOTEL & CASINO; DOES 1 through 10; ROE CORPORATIONS 13 through 20; and ABC LIMITED LIABILITY COMPANIES 21 through 30,<br><br>Defendants. | CASE NO.:<br><br>**SECOND AMENDED COMPLAINT** |

COMES NOW, Plaintiff, S.H., by and through her counsel of record, Christian M. Morris, Esq., Sarah E. DiSalvo, Esq., and Lindsay N. Roginski, Esq., of the law firm CHRISTIAN MORRIS TRIAL ATTORNEYS, for their causes of action against Defendants above named, and each of them, and complains and alleges as follows:

///

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

## INTRODUCTION

Defendants DIAMOND INN MOTEL AND MARDI GRAS INN LIMITED PARTNERSHIP (hereinafter "Defendants") exploited victims of sex trafficking, deliberately ignoring blatant signs of abuse to maximize their profits. Defendants prioritized financial gains over the lives and dignity of countless victims, creating an environment where traffickers could operate with impunity. Defendants' willful negligence and active complicity demonstrate a shocking disregard for human life, as they knowingly facilitated the systematic abuse and exploitation of vulnerable individuals for years. Plaintiff S.H., is one of many vulnerable individuals who were coerced into sex trafficking, forced into commercial acts, and subjected to abuse, all while Defendants turned a blind eye to their suffering. Defendants and their staff consistently ignored clear indicators and reports of sex trafficking at the Diamond Inn Motel ("Diamond") and the Mardi Gras Hotel & Casino Las Vegas ("Mardi Gras"), allowing their properties to become a hub for sex trafficking, profiting from the repeated bookings and extending stays while countless lives were shattered within its walls.

## PARTIES

1. Plaintiff S.H. is and at all times relevant hereto was a resident of Las Vegas, Nevada.

2. Plaintiff S.H., (hereinafter "Plaintiff"), is a victim of trafficking pursuant to 22. U.S.C. § 7102(12), 22. U.S.C. § 7102(16), 22. U.S.C. § 7102(17), 18 U.S.C. § 1591(a), and 18 U.S.C. § 1595.

3. Due to the sensitive and intimate nature of the issues, Plaintiff S.H., requests that this Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) to permit her to proceed under a pseudonym and to ensure that Defendants maintain the confidentiality of Plaintiff's identity during this lawsuit and thereafter.[1]

---

[1] In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Does I thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058, 1069 (9th Cir. 2000).

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

4. Generally, under the Federal Rules of Civil Procedure, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved are of a sensitive and highly personal nature.[3] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. [4]

5. Here, granting pseudonym status and proceeding under seal is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including rape. Plaintiff S.H. fears the stigma from their families, friends, employers, and communities if their true identities are revealed in the public record.

6. Additionally, disclosing the identities of Plaintiff S.H. may put her safety at risk. Victims of trafficking often face serious harm, including threats, violence, and retaliation, when they take legal action against their traffickers or those associated with them. In some cases, this danger can escalate to severe injury or even loss of life.

7. Plaintiff S.H. should not be compelled to disclose her identity in order to maintain her privacy and safety. Plaintiff's privacy interests substantially outweigh the customary practice of judicial openness.[5]

8. Moreover, Defendants will not be prejudiced by Plaintiff proceeding under pseudonym. Plaintiff S.H. is willing to disclose her identity to Defendants for the limited purpose of investigating her claims, provided that a protective order is in place. Accordingly, Plaintiff S.H. simply seeks redaction of her personal identifying information from the public docket and assurances that Defendants will not disclose or publish their identities due to the sensitive and intimate nature of this case. Plaintiff S.H. requests that this Court grant a protective order pursuant

---

[2] Fed. R. Civ. P. 10(a).

[3] A district court must balance the need for anonymity against the general presumption that the parties' identities are public information and the risk of unfairness to the opposing party. *See, e.g., M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir.1998); *James v. Jacobson*, 6 F.3d at 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir.1992*); Doe v. Stegall*, 653 F.2d at 186 (5th Cir.); see *also Doe v. Frank* at 323 (11th Cir. 1992) (holding that a plaintiff should be permitted to proceed anonymously in cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity).

[4] Fed. R. Civ. P. 26(c).

[5] Does I thru XXIII, 214 F.3d at 1068 (joining its 4th, 5th, 10th, and 11th sister circuits in holding that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity).

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

to Fed. R. Civ. P. 26(c) to allow her to proceed under pseudonym and to ensure the confidentiality of her identity both during and after this litigation, safeguarding their safety, personal lives, relationships, and future employment prospects.

9. Defendant SAM ALDABBAGH d/b/a DIAMOND INN MOTEL (hereinafter "Diamond Inn") was a privately owned company under the laws of the State of Nevada, with its principal place of business located in Nevada, and at all times relevant was doing business in Clark County, Nevada.

10. Upon information and belief, Defendant Diamond owned, operated, and managed the premises known as the Diamond Inn Motel, located at 4605 S. Las Vegas Blvd, Las Vegas, Nevada, 89119.

11. Defendant MARDI GRAS INN LIMITED PARTNERSHIP d/b/a MARDI GRAS HOTEL & CASINO (hereinafter "Mardi Gras") is a domestic limited partnership under the laws of the State of Nevada, with its principal place of business located in Nevada, and at all times relevant was doing business in Clark County, Nevada.

12. Upon information and belief, Defendant Mardi Gras owned, operated, and managed the premises known as the Mardi Gras Hotel & Casino (hereinafter "Mardi Gras"), located at 3500 Paradise Road, #101, Las Vegas, Nevada, 89169.

13. Plaintiff is informed, believes and thereon alleges that all of the acts, omissions and conduct described below of each, and every Defendant was duly authorized, ordered, and directed by the respective and collective Defendant corporate employers, officers, and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents and representatives and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents and representatives, the Defendant corporations, respectively and collectively, ratified, accepted the benefits of, condoned, lauded, acquiesced, approved, and consented to each and every of the said acts and conduct of the aforesaid corporate employees, agents and representatives.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

14. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants designated herein as DOES 1 through 10; ROE CORPORATIONS 11 through 20, and ABC LIMITED LIABILITY COMPANIES 21 through 30, ("DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants"), inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this Complaint accordingly, and reserve the right to do so at the appropriate time.

15. Plaintiff is informed, believes, and thereon alleges that DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants are responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged.

16. Plaintiff is informed, believes, and thereon alleges that DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants were involved in the initiation, approval, support or execution of the wrongful acts upon which this litigation is premised, or of similar actions against Plaintiffs of which Plaintiff is presently unaware or without adequate knowledge.

17. Plaintiff is informed, believes, and thereon alleges that DOES/ROE/ABC Defendants are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all defendants named herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by Plaintiffs herein. Upon information and belief, each of the defendants designated as DOES/ROE/ABC is in some manner vicariously and/or statutorily responsible for the events alleged by this Complaint and actually, proximately, and/or legally caused damages to Plaintiff.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

18. Defendants, and each of them, were the apparent and ostensible principals, apparent and ostensible agents, agents, apparent and ostensible servants, servants, apparent and ostensible employees, employees, apparent and ostensible assistants, assistants, apparent and ostensible consultants, and consultants of their Co-Defendants, and were acting as such within the course, scope, and authority of said agency and employment, and that each of the defendants, as aforesaid, when acting as a principal, was in some manner responsible for the events alleged herein as an agent, servant, employee, assistant, and consultant.

19. Every act or omission of the Defendants and their apparent and ostensible principals, principals, apparent and ostensible agents, agents, apparent and ostensible servants, servants, apparent and ostensible employees, apparent and ostensible assistants, assistants, apparent and ostensible consultants, and consultants of their Co-Defendants, whether or not within the scope of their agency, was ratified by the other remaining Defendants.

**JURISDICTION AND VENUE**

20. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

21. This Federal District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, specifically the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595.

22. This Federal District Court has personal jurisdiction over Defendants Diamond Inn and Mardi Gras, pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Nevada's long-arm statute, NRS 14.065, because Defendants have purposefully availed themselves of the privilege of conducting business activities within Nevada. Further, Defendants have established minimum contacts with Nevada through their ownership, operation, and/or control of the hotel properties where Plaintiff

was trafficked, as well as their continuous and systematic business activities in Nevada as outlined above.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

Specifically, Plaintiff was trafficked at the Diamond Inn Motel and Mardi Gras Hotel & Casino, located within this District.

24. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3), as this Federal District Court has personal jurisdiction over Defendants Diamond Inn and Mardi Gras.

**SEX TRAFFICKING UNDER FEDERAL LAW**

25. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

26. The requirement for liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") § 1595, based on a beneficiary theory, can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value"; (2) "from participating in a venture"; which (3) the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

27. Sex trafficking' is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

28. "Commercial Sex Act" is defined as any sex act for which anything of value is given to or received by a person. 22 U.S.C. § 7102(4).

29. "Severe Forms of Trafficking in Persons" is defined as any instance of sex trafficking where: (a) a commercial sex act is induced by force, fraud, or coercion; or (b) the person induced to perform such an act is under eighteen (18) years of age. 22 U.S.C. § 7102(11).

30. Pursuant to 18 U.S.C. § 1591(a), all who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion, or "cause a person to engage in a commercial sex act" are guilty of sex trafficking. This includes, at a minimum, both the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

31. 18 U.S.C. § 1595 provides for a beneficiary liability claim against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

value from participation in a venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. *See* 18 U.S.C. § 1595(a).

## GENERAL ALLEGATIONS

32. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

33. The Sex Trafficking industry generates approximately $236 Billion annually[6], making it the second-largest criminal trade after the sale of illegal drugs.[7]

34. Traffickers use hotel and motel rooms as hubs for their operations,[8] where victims are harbored, raped, assaulted, and forced to service buyers. The hospitality industry has made millions by participating in ventures that it knew or should have known engaged in violations of the TVPRA, under 18 U.S.C. §1591(a).

35. Due to the prevalent connection between hotels and sex trafficking, government agencies and nonprofits including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the United States Department of Transportation, various attorney generals, and the End Child Prostitution and Trafficking (hereinafter "ECPAT"), among others, have extensively educated the hotel industry, including Diamond Inn and Mardi Gras, on identifying and responding to sex trafficking incidents

///

///

///

///

///

---

[6] Rosalyn Roden, *Traffickers taking $236 billion in illegal profits at victims' expense*, Hope for Justice (citing International Labor Organization's 2024 report), (last visited April 15, 2025), https://hopeforjustice.org/news/traffickers-taking-236-billion-in-illegal-profits-at-victims-expense/

[7] *Transnational organized crime: the globalized illegal economy*, United Nations Office on Drugs, (last visited April 15, 2025), https://www.unodc.org/toc/en/crimes/organized-crime.html

[8] Bradley Myles, *Combating Human Trafficking in the Hotel Industry*, HUFFINGTON POST (last visited April 15, 2025), https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_7840754

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

and have established recommended policies and procedures for recognizing signs of sex trafficking.[9] [10]

36. Indicators of sex trafficking in a hotel environment follow a well-known pattern and are easily detectable by appropriately trained staff. Various organizations have developed human trafficking "tool kits," which help hotel staff in every position identify and respond to signs of sex trafficking.[11] From check-in to check-out, there are indicators that traffickers and their victims exhibit during their stay at the hotel.

37. Despite this knowledge, the hotel industry continues to prioritize profits over victims' safety. While hospitality corporations swiftly adapted their business practices to respond to the COVID-19 pandemic, they have remained inactive in the face of the human trafficking crisis. This failure to take meaningful action has led to the repeated sexual abuse and rape of victims on their properties.

38. Upon information and belief, Defendants, and each of them, systematically failed to create, adopt, implement, and enforce anti-trafficking policies. This failure persists despite the availability of resources and training programs specifically designed for the hospitality industry to combat human trafficking.

---

[9] Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025) https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, (last visited April 15, 2025), https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, (last visited April 15, 2025), https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, *Human Trafficking Red Flags*, (last visited April 15, 2025) https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

[10] United States Department of Homeland Security Blue Campaign – *One Voice. One Mission. End Human Trafficking*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing and Exploited Children, *Trafficking Risk Factors*, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 15, 2025); Love 146, *Red Flags for Hotel & Motel Employees*, (last visited April 15, 2025), https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human *Trafficking Red Flags*, (last visited April 15, 2025) https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 15, 2025); U.S. Department of Transportation, *Indicators of Human Trafficking,* (last visited April 15, 2025), https://www.transportation.gov/stop-human-trafficking/indicators; Ohio Attorney *General, Human Trafficking Initiative*, (last visited April 15, 2025), https://www.ohioattorneygeneral.gov/Individuals-and-Families/Victims/Human-Trafficking.

[11] E.g., Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

39. Upon information and belief, Defendants, and each of them, neglected to provide staff with necessary training to identify and respond to trafficking, and failed to mandate training, allowing trafficking to persist unchecked.

40. Defendants, and each of them, have actively profited from renting rooms where victims are forced into commercial sex against their will.

41. Plaintiff in this case is a survivor of sex trafficking, seeking justice through the judicial system, which Congress has empowered to provide remedies under the TVPRA. Under 18 U.S.C. § 1595, Defendants, and each of them, knowingly benefited from participation in a venture that it knew or should have known to be in engaging in violations of 18 U.S.C. § 1591(a).

42. Plaintiff has suffered severe injuries as a result of their prolonged exploitation, including ongoing mental, emotional, and psychological trauma. Under Section 1595 of the TVPRA liable for a victim's damages. Plaintiff is entitled to all compensatory and non-compensatory damages incurred during their trafficking period.

43. The hospitality industry cannot continue to feign ignorance while profiting from the exploitation of trafficking victims. Defendants, and each of them, must be held accountable for their knowing participation in ventures that violate the TVPRA, prioritizing financial gain over the safety and dignity of the individuals who have suffered under their watch.

**DEFENDANTS' ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF SEX TRAFFICKING AT THE DIAMOND INN MOTEL**

44. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

45. Upon information and belief, Defendants are aware that the hospitality industry serves as a primary facilitator of human trafficking, both domestically and internationally.[12] The

---

[12] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION, (last visited April 15, 2025) https://ecommons.cornell.edu/items/62deb32c-ce31-4780-bb95-7827509a8890.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

United Nations,[13] international non-profit organizations,[14] and the U.S. Department of Homeland Security,[15] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

46. Since 2004, initiatives like ECPAT-USA launched the Tourism Child-Protection Code of Conduct (hereinafter the "Code") in the United States outlining specific hotel practices to prevent sex trafficking, such as: (1) prohibiting hourly room rates; (2) disallowing cash payments for accommodations; (3) monitoring online platforms for sex advertisements mentioning the hotel's name or featuring images of its rooms; (4) implementing regular changes to internet and Wi-Fi passwords in guest rooms and public areas; (5) tracking patterns of frequent visitors to specific rooms; (6) maintaining vigilance for rooms with excessive quantities of prophylactics, lubricants, and towels; and (7) mandating the registration of all visitors, including detailed information such as guest name, visitor name, arrival and departure times, and room number.

47. Nationwide initiatives, such as the United Nations' Blue Heart Campaign (1997)[16] and the Department of Homeland Security's Blue Campaign (2010)[17], have acknowledged the prevalence of human trafficking within the hotel industry and the absence of adequate internal policies to address the issue. In response, these campaigns have aimed to educate both the public

///

---

[13] UNITED NATIONS OFFICE ON DRUGS AND CRIME, *Global Report on Trafficking in Persons*, (last visited April 15, 2025), https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf; *See also,* UNITED NATIONS OFFICE ON DRUGS AND CRIME, *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners*, (last visited April 15, 2025), https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html

[14] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[15] U.S. Department of Homeland Security, *Human Trafficking and the Hospitality Industry*, (last visited April 15, 2025), https://www.dhs.gov/archive/blue-campaign/human-trafficking-and-hospitality-industry; U.S. Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

[16] United Nations, *The Blue Heart Campaign,* (last visited April 15, 2025), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime

[17] Department of Homeland Security, *DHS Blue Campaign Five Year Milestone*, (last visited April 15, 2025), *https://www.dhs.gov/archive/news/2015/07/22/dhs-blue-campaign-five-year-milestone*

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

and private sectors, including hotel businesses, by providing free resources to help the hospitality industry combat human trafficking.

48. Widely recognized indicators of sex trafficking, which Defendants were made aware of, knew, or should have known, include but are not limited to:

a. Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;
b. Individuals show signs of physical abuse, restraint, and/or confinement;
c. Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;
d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
e. Individuals lack freedom of movement or are constantly monitored;
f. Individuals avoid eye contact and interaction with others;
g. Individuals have no control or possession of money or ID;
h. Individuals dress inappropriately for their age, for the weather, or have lower quality clothing compared to others in their party;
i. Individuals have few or no personal items – such as no luggage or other bags;
j. Individuals appear to be with significantly older "boyfriend" or in the company of older males;
k. A group of girls appear to be traveling with an older female or male;
l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;
m. Drug abuse or frequent use of "party drugs" including (but not limited to) GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Crack Cocaine, Cocaine, and Marijuana;
n. Possession of bulk sexual paraphernalia such as attire, condoms, birth control, or lubricant;
o. Possession or use of multiple cell phones; and
p. Possession or usage of large amounts of cash or pre-paid cards.

49. Upon information and belief, Defendants had access to their hotel location's do-not-rent (hereinafter "DNR") list that often list reasons for the refusal to rent, including suspicion of human trafficking.

50. Guest reviews on sites like TripAdvisor, Yelp, Google, and Expedia frequently cite issues such as prostitution, physical violence, and criminal activity at the Diamond Inn Motel.

51. Defendants monitored online reviews of the Diamond Inn Motel, which, upon information and belief, provide substantial evidence of human trafficking, violence, and other illicit activities occurring on the premises, such as:

a. A review from 2022 states "If you like the extra party favors for adults and working girls that's your place."

b. A review from 2017 states "Old, run down cheap motel. Perfect for those secret rendezvous."

c. A review from 2018 states "Old CRT TV's that only played 2 channels… and one channel was the absolute worst porn ever…"

d. A review from 2018 states "There was a bullet hole in the window. It's run down. TV only had porn. Lots of prostitutes take up residence there."

e. A review from 2018 states "…Before you have kids turn on the tv, be aware of the 5 channels is playing 24-hour hardcore porn…"

f. A review from 2018 states "dirty just for the criminals great place."

g. A review from 2022 states "Don't stay here pimps, hookers, and needles all around but if you want cheap and won't sleep and fear for your life."

h. A review from 2016 states "Rooms are nice for what they are, has creepy feeling staying there cause the owner Sam Aldabbagh watching the cameras obsessively."

i. A review from 2012, by a prior employee, states "I used to work here this place is no good this place is made for drugs pimps drug dealers, anyone who is the lower of the low. If your smart you will NOT stay here."

j. A review from 2024 states "Ok for all the addicted and nite life ladies. This is your place to be…"

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

k. A review from 2022 states " … Diamond Inn is conveniently located in the mists of tons of hookers, druggies, waiting to rob you for whatever they think is a come up. Anyone can get a room here without a problem. Friendly security guard kept trying to sell me weed as he was walking the property to talk to all the working ladies…."

l. A review from 2019 states "Hooker hotel that turns a blind eye… Cash only."

m. A review from 2022 states " … and let's not talk about the hookers outside and the crack heads."

n. A review from 2018 states "Hookers robbed a guy, he was yelling help police because they were beating him up in parking lot at 6 am. …"

o. A review from 2010 states "Awesome old-school motel right across the street from Mandalay Bay… clean meth-motel rooms…" (Attached are photos of girls in lingerie in the room)

p. A review from 2023 states "May (front desk) hanging out with a junkie in the lobby. 3 Drug dealer junkies hanging outside offering meth and heroin…. It finally clicked that this place was for crackheads. …"

q. A review from 2018 states "… tv only had porn and movie previews…definitely a place drug addicts and prostitutes go… you can tell cops have raided the place too by the doors being busted in. …"

r. A review from 2017 states " … One channel on TV (24hr porn)… Shady characters all about. I can't believe this place gets away with renting these rooms!..."

52. Upon information and belief, these reviews—spanning more than a decade—provide direct, publicly available evidence that sex trafficking and related criminal activity were openly occurring at the Diamond Inn Motel. The consistency of these reports demonstrates that Defendants had actual knowledge, or at a minimum constructive knowledge, of this ongoing criminal conduct. Despite this notice, Defendants willfully ignored the problem, continued to rent rooms in the same manner, and thereby chose to profit from and facilitate sex trafficking.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

53. Upon information and belief, the owner and operator of the Diamond Inn Motel also owns, controls, and profits from the "Can Can Room," a known Las Vegas strip club located less than two miles from the Diamond Inn. The close proximity of both entities, their intertwined ownership, and their overlapping illicit reputations demonstrate that Defendants were not passive landlords but active participants in an established criminal enterprise built on the exploitation of vulnerable women.

54. Multiple public sources, including criminal court records, police investigations, and media reports, reflect that the Can Can Room has long been associated with prostitution, solicitation, narcotics distribution, and other forms of organized vice activity.

55. Upon information and belief, local law enforcement officers have cited both the Diamond Inn and the Can Can Room as "problem properties" for their repeated involvement in illicit activity directly tied to sex trafficking in the Las Vegas Valley.

56. Upon information and belief, the individual owner of both the Diamond Inn Motel and the Can Can Room, while operating under the guise of a legitimate businessman, has knowingly used these enterprises as vehicles for prostitution, narcotics, and sex trafficking, personally profiting from and furthering the trafficking venture in violation of the TVPA.

57. Upon information and belief, Defendants intentionally operated the Diamond Inn Motel as a convenient hub and feeder location for the Can Can Room, providing traffickers and pimps with low-cost rooms to harbor victims of sex trafficking, who were then compelled to provide commercial sex acts at both locations. Defendants acted in concert with known traffickers, pimps, and criminal organizations, and profited from this illegal symbiotic relationship.

58. The dual ownership of both establishments is not incidental but rather evidences a deliberate pattern of criminal conduct. By maintaining and operating businesses with reputations grounded in prostitution, exploitation, and narcotics, Defendants demonstrated actual knowledge of and reckless disregard toward the rampant sex trafficking on their properties.

59. Upon information and belief, Defendants' criminal responsibility extends beyond mere willful blindness. Defendants played an active role in facilitating the trafficking economy

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

by (a) renting rooms to known pimps and traffickers on a cash-only basis; (b) failing to require proper guest identification or tracking visitors in violation of standard hospitality industry practices; (c) providing security and surveillance that was used not to deter crime but to monitor and control women being trafficked; and (d) colluding with traffickers by allowing the Can Can Room to serve as a venue where trafficked women were sold for commercial sex to Defendants' profit.

60. Based on the accumulation of public information, news reports, and online reviews, by the time Plaintiff was trafficked the Diamond Inn Motel, Defendants knew or should have known, that:

a. Sex trafficking was pervasive, obvious, and ongoing at the Diamond Inn Motel;

b. Despite this knowledge, Defendants failed to implement reasonable policies or procedures to prevent or detect sex trafficking at the property;

c. Any measures Defendants may have taken were superficial, ineffective, and knowingly inadequate;

d. Defendants routinely profited by providing rooms and services in a manner that facilitated sex trafficking; and

e. Defendants deliberately turned a blind eye to the trafficking crisis on its premises in order to continue generating revenue from it.

61. Upon information and belief, Defendants understood the greater risks of prostitution and sex trafficking occurring in the Las Vegas area, due to its notoriety as a hub for prostitution.

62. Upon information and belief, Defendants had both actual and constructive knowledge that sex trafficking was occurring at the Diamond Inn Motel. For years, news articles, public reviews, and complaints openly documented prostitution, drug activity, violence, and trafficking on the property, providing Defendants with repeated and undeniable notice.

///

///

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

63. Despite this overwhelming notice, Defendants failed to take even basic steps to prevent or detect sex trafficking. Defendants did not implement training, monitoring, or reporting protocols, nor did they meaningfully cooperate with law enforcement. Any measures Defendants claim to have taken were superficial, perfunctory, and knowingly ineffective.

64. Instead of intervening, Defendants continued to rent rooms and operate the motel in a manner that made it a safe haven for traffickers and their criminal networks. This deliberate lack of oversight ensured that trafficking could continue unchecked and, in fact, that the Diamond Inn became a well-known site for commercial sex and related crime.

65. Defendants knowingly benefitted from this criminal activity by charging traffickers and victims for rooms, collecting cash payments with little to no oversight, and continuing business practices that made the property attractive to sex traffickers. Defendants prioritized profit over safety, turning a blind eye to the trafficking crisis at their doorstep in order to continue generating revenue.

66. Upon information and belief, Defendants' actions—and deliberate failures to act—were not accidental. Defendants chose to ignore trafficking, chose not to intervene, and chose to profit by providing a venue where trafficking was pervasive, obvious, and ongoing.

67. Upon information and belief, Defendants exercise comprehensive control over security and the reporting of criminal activities, including human trafficking, across their property. Despite having the responsibility and the means to monitor and address these reports through various security measures, such as camera surveillance and customer data analysis, Defendants failed to act on clear indicators of trafficking. This neglect facilitated the sex trafficking of individuals, including Plaintiff.

**DEFENDANT'S ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF SEX TRAFFICKING AT THE MARDI GRAS HOTEL & CASINO**

68. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

///

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

69. Upon information and belief, Defendants are aware that the hospitality industry serves as a primary facilitator of human trafficking, both domestically and internationally.[18] The United Nations,[19] international non-profit organizations,[20] and the U.S. Department of Homeland Security,[21] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

70. Since 2004, initiatives like ECPAT-USA launched the Tourism Child-Protection Code of Conduct (hereinafter the "Code") in the United States outlining specific hotel practices to prevent sex trafficking, such as: (1) prohibiting hourly room rates; (2) disallowing cash payments for accommodations; (3) monitoring online platforms for sex advertisements mentioning the hotel's name or featuring images of its rooms; (4) implementing regular changes to internet and Wi-Fi passwords in guest rooms and public areas; (5) tracking patterns of frequent visitors to specific rooms; (6) maintaining vigilance for rooms with excessive quantities of prophylactics, lubricants, and towels; and (7) mandating the registration of all visitors, including detailed information such as guest name, visitor name, arrival and departure times, and room number.

///

///

///

///

---

[18] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION, (last visited April 15, 2025) https://ecommons.cornell.edu/items/62deb32c-ce31-4780-bb95-7827509a8890.

[19] UNITED NATIONS OFFICE ON DRUGS AND CRIME, *Global Report on Trafficking in Persons*, (last visited April 15, 2025), https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf; *See also,* UNITED NATIONS OFFICE ON DRUGS AND CRIME, *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners*, (last visited April 15, 2025), https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html

[20] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[21] U.S. Department of Homeland Security, *Human Trafficking and the Hospitality Industry*, (last visited April 15, 2025), https://www.dhs.gov/archive/blue-campaign/human-trafficking-and-hospitality-industry; U.S. Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

71. Nationwide initiatives, such as the United Nations' Blue Heart Campaign (1997)[22] and the Department of Homeland Security's Blue Campaign (2010)[23], have acknowledged the prevalence of human trafficking within the hotel industry and the absence of adequate internal policies to address the issue. In response, these campaigns have aimed to educate both the public and private sectors—including hotel businesses—by providing free resources to help the hospitality industry combat human trafficking.

72. Widely recognized indicators of sex trafficking, which Defendants were made aware of, knew, or should have known, include but are not limited to:

a. Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

b. Individuals show signs of physical abuse, restraint, and/or confinement;

c. Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

e. Individuals lack freedom of movement or are constantly monitored;

f. Individuals avoid eye contact and interaction with others;

g. Individuals have no control or possession of money or ID;

h. Individuals dress inappropriately for their age, for the weather, or have lower quality clothing compared to others in their party;

i. Individuals have few or no personal items – such as no luggage or other bags;

j. Individuals appear to be with significantly older "boyfriend" or in the company of older males;

k. A group of girls appear to be traveling with an older female or male;

///

---

[22] United Nations, *The Blue Heart Campaign,* (last visited April 15, 2025), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime

[23] Department of Homeland Security, *DHS Blue Campaign Five Year Milestone*, (last visited April 15, 2025), *https://www.dhs.gov/archive/news/2015/07/22/dhs-blue-campaign-five-year-milestone*

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m. Drug abuse or frequent use of "party drugs" including (but not limited to) GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Crack Cocaine, Cocaine, and Marijuana;

n. Possession of bulk sexual paraphernalia such as attire, condoms, birth control, or lubricant;

o. Possession or use of multiple cell phones; and

p. Possession or usage of large amounts of cash or pre-paid cards.

73. Upon information and belief, Defendants have access to their hotel location's do-not-rent (hereinafter "DNR") list that often list reasons for the refusal to rent, including suspicion of human trafficking.

74. Guest reviews on sites like TripAdvisor, Yelp, Google, and Expedia frequently cite issues such as prostitution, physical violence, and criminal activity at the Mardi Gras.

75. Defendants monitored online reviews of the Mardi Gras, which, upon information and belief, provide substantial evidence of human trafficking, violence, and other illicit activities occurring on the premises, such as:

a. A review from 2020 states "… you all still need to see how dirty this hotel is they having a prostitution sting over there because my girlfriend and I were approached…"

b. A review from September 2020 states "… My room was next to a room that had prostitutes and drugs. I counted over 55 people going in and out of that room during the day…"

c. A review from August 2018 states "… Prostitutes roam the parking lot at night. …"

d. A review from June 2017 states "… Afraid to step outside, as I do not want to witness another drug deal or see any more prostitutes. …"

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

e. A review from September 2011 states "… The only good thing about this hotel was the pool area. The bar and slots was a hangout for the local prostitutes and the area it is in had homeless people begging for money …"

f. A review from August 2013 states "… Not uncommon to see drug dealers and prostitutes in the parking lot."

g. A review from June 2022 states " … As we pulled up our first site was a pimp and a hooker being arrested …"

h. A review from September 2020 states " … There was a pimp and his girls in the little so called casino. …"

i. A review from December 2013 states "… The hallway is filled with homeless people and hookers. Wouldn't recommend it to my worst enemy."

j. A review from May 2020 states "I knew this place was questionable since it used to be a crappy weekly spot that crackheads and $40 hookers loved… Pimps, druggies and prostitutes EVERYWHERE. …"

k. A review from September 2020 states "If you want to see a lot of hookers and drug addicts this hotel is for you…"

l. A review from November 2021 states "…And a hooker was trying to get my husband to buy weed and sex. …"

76. Upon information and belief, these reviews, spanning years, provide clear evidence of human trafficking at the Mardi Gras. These examples demonstrate that the Defendants knew or should have known of the problem and failed to take proactive measures to not profit from it.

77. Based on the accumulation of public information, news reports, and online reviews, by the time Plaintiff was trafficked the Diamond Inn, Defendants knew or should have known, that:

a. Sex trafficking was pervasive, obvious, and ongoing at the Mardi Gras;

b. Despite this knowledge, Defendants failed to implement reasonable policies or procedures to prevent or detect sex trafficking at the property;

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

c. Any measures Defendants may have taken were superficial, ineffective, and knowingly inadequate;

d. Defendants routinely profited by providing rooms and services in a manner that facilitated sex trafficking; and

e. Defendants deliberately turned a blind eye to the trafficking crisis on its premises in order to continue generating revenue from it.

78. Upon information and belief, Defendants understood the greater risks of prostitution and sex trafficking occurring in the Las Vegas area, due to its notoriety as a hub for prostitution.

79. Upon information and belief, Defendants had both actual and constructive knowledge that sex trafficking was occurring at the Mardi Gras. For years, news articles, public reviews, and complaints openly documented prostitution, drug activity, violence, and trafficking on the property, providing Defendants with repeated and undeniable notice.

80. Despite this overwhelming notice, Defendants failed to take even basic steps to prevent or detect sex trafficking. Defendants did not implement training, monitoring, or reporting protocols, nor did they meaningfully cooperate with law enforcement. Any measures Defendants claim to have taken were superficial, perfunctory, and knowingly ineffective.

81. Instead of intervening, Defendants continued to rent rooms and operate the motel in a manner that made it a safe haven for traffickers and their criminal networks. This deliberate lack of oversight ensured that trafficking could continue unchecked and, in fact, that the Mardi Gras became a well-known site for commercial sex and related crime.

82. Defendants knowingly benefitted from this criminal activity by charging traffickers and victims for rooms, collecting cash payments with little to no oversight, and continuing business practices that made the property attractive to sex traffickers. Defendants prioritized profit over safety, turning a blind eye to the trafficking crisis at their doorstep in order to continue generating revenue.

83. Upon information and belief, Defendants' actions—and deliberate failures to act—were not accidental. Defendants chose to ignore trafficking, chose not to intervene, and

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

chose to profit by providing a venue where trafficking was pervasive, obvious, and ongoing.

84. Upon information and belief, the Defendants exercise comprehensive control over security and the reporting of criminal activities, including human trafficking, across their property. Despite having the responsibility and the means to monitor and address these reports through various security measures, such as camera surveillance and customer data analysis, Tuscany failed to act on clear indicators of trafficking. This neglect facilitated the sex trafficking of individuals, including Plaintiff.

**THE SEX TRAFFICKING OF PLAINTIFF S.H. AT THE DEFENDANTS' PROPERTIES**

85. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

86. By means of a combination of force, coercion, physical abuse, threats, manipulation, compelled use of and dependency on illegal substances, control over identification documents and possessions, and deprivation of basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing, Plaintiff S.H.'s Trafficker forced her to have commercial sex for money.

87. Plaintiff S.H.'s trafficking began when she first met her Trafficker in Las Vegas, Nevada. What seemed like a romantic relationship quickly evolved into one of abuse and control. Plaintiff S.H.'s Trafficker coerced her into trafficking in 2018, which continued for several years.

88. Thereafter, Plaintiff S.H.'s trafficking occurred exclusively in the Las Vegas, Nevada area.

89. During Plaintiff S.H.'s trafficking in Las Vegas, Plaintiff S.H. was coerced to perform various sexual services at the Diamond Inn Motel and Mardi Gras.

90. Plaintiff S.H.'s trafficker repeatedly rented rooms at Defendants' motel because the property offered exactly what traffickers seek—anonymity, convenience, and steady access to buyers. He was able to check in under his own name, Plaintiff's name, or even the names of acquaintances, all without meaningful verification or screening by Defendants.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

91. While at the Diamond Inn Motel, S.H.'s trafficker openly advertised her for commercial sex on widely known websites used to sell victims, including Craigslist, Erotic Monkey, USA Sex Guide, Mojo Village, and Escort Alligator. Upon information and belief, these advertisements were posted while connected to Defendants' internet services.

92. During her stays at the Diamond Inn Motel and Mardi Gras, Plaintiff S.H. was not a guest but a captive. She was held against her will, raped on a daily basis, and forced to perform sex acts for multiple buyers each day under threats of violence.

93. While trafficked at the Diamond Inn Motel and Mardi Gras, Plaintiff S.H. was subjected to relentless abuse. Her trafficker withheld food and water, injected her with illegal drugs against her will, and threatened her with death or severe harm. He beat her regularly and psychologically tormented her to ensure her obedience.

94. The Diamond Inn was the first property where Plaintiff S.H. was sex trafficked. From the outset of her exploitation, Defendants' Diamond Inn Motel served as a base of operations for her trafficker.

95. Throughout her stays, Plaintiff S.H. interacted with multiple hotel staff at the Diamond Inn Motel and Mardi Gras while displaying obvious red flags of trafficking—visible fear and control by her trafficker, injuries, disheveled appearance, distress, and inability to act independently. Despite these clear signs, recognizable to any reasonable person, no employee made any attempt to intervene or notify law enforcement.

96. Plaintiff S.H. also had frequent interactions with the Diamond Inn Motel's maintenance worker, who resided on the property. This worker confided in S.H. that he was fearful of speaking openly because the owner, Sam Aldabbagh, monitored guests and employees obsessively through the motel's network of security cameras. The worker further disclosed that Sam Aldabbagh used these cameras to identify vulnerable women to recruit into his nearby strip club.

97. On one occasion, the maintenance man at the Diamond Inn Motel, acting at Sam Aldabbagh's direction, approached Plaintiff S.H. about working at Sam Aldabbagh's strip club. He transported her to an interview with the owner, during which Sam Aldabbagh asked her

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

invasive and exploitative questions about her "kinks," her "enjoyment" of what she was being forced to do, and her drug use. When Plaintiff resisted his questions, Sam Aldabbagh ended the meeting and walked away.

98. During her stays at the Diamond Inn Motel, Plaintiff S.H. could often be heard crying and screaming from her room while she was assaulted and abused by her trafficker. These alarming sounds of violence and distress were ignored by staff, and neither welfare checks nor calls to police were ever made. Any reports or complaints directed to management went unanswered.

99. Plaintiff S.H. was regularly seen at the Diamond Inn Motel and Mardi Gras with visible injuries, including bloody noses, black eyes, bruises across her body, and bleeding cuts. These injuries were apparent, repeated, and consistent with abuse, yet staff did nothing.

100. Plaintiff S.H. was frequently beaten by her trafficker at the Diamond Inn Motel and Mardi Gras. He would punch and kick her, often trapping her in a corner for hours at a time.

101. Plaintiff S.H.'s trafficker frequently beat her at the Diamond Inn Motel and Mardi Gras —punching, kicking, and trapping her in corners for hours at a time. These violent episodes left Plaintiff S.H. terrified, debilitated, and visibly injured.

102. Despite the repeated, visible, and ongoing abuse of Plaintiff S.H. at the Diamond Inn Motel and Mardi Gras, Defendants' staff never intervened, never performed welfare checks, and never notified law enforcement. Defendants chose silence and inaction, ensuring that Plaintiff's trafficking and abuse could continue unchecked within their motel.

103. During her stay at the Diamond Inn Motel, Plaintiff S.H.'s Trafficker implemented a methodical and well-established operational protocol, consistent with practices widely recognized within the illicit sex trafficking industry, such as:

a. An unusually high volume of individuals entered and exited Plaintiff S.H.'s room at frequent intervals;

b. Plaintiff S.H.'s Trafficker consistently refused housekeeping services, denying hotel staff entry to the room;

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

c. Plaintiff S.H.’s room exhibited an excessive quantity of used illicit drugs, prophylactics, soiled linens, and discarded clothing, indicative of commercial sexual activity.

d. Plaintiff S.H. was consistently accompanied by her Trafficker when entering the premises, displaying evident signs of distress, including evasive behavior, reticence, and visible fear.

e. Audible disturbances, including loud vocalizations and screams, emanated from Plaintiff S.H.'s room, suggestive of ongoing abuse and sexual assault.

f. Plaintiff S.H.'s Trafficker consistently utilized cash payments for room reservations at the Diamond Inn, a common practice in sex trafficking operations;

g. Plaintiff S.H.'s Trafficker routinely requested accommodations in secluded areas of the hotel, away from other guests;

h. Plaintiff S.H.'s Trafficker made frequent and excessive requests for fresh linens and towels;

i. An unusually large quantity of used prophylactics was consistently observed in Plaintiff S.H.’s Diamond Inn rooms;

j. Plaintiff S.H.'s Trafficker repeatedly instructed hotel staff not to disturb the room occupants;

k. Plaintiff S.H. was often observed wearing attire inappropriate for the prevailing weather conditions;

l. Instances of loitering and solicitation by Plaintiff S.H. were observed at Diamond Inn;

104. Consequently, Defendants knew—or should have known—that Plaintiff S.H. was being trafficked at the Diamond Inn Motel. The indicators of sex trafficking displayed by Plaintiff were pervasive, obvious, and readily apparent, especially to professionals in the hospitality industry who are trained and expected to recognize such warning signs.

///

///

105. Despite the presence of numerous trafficking indicators that should have been recognizable to trained hospitality staff, employees and/or agents of Diamond Inn, placed Plaintiff S.H. in rooms isolated from other guests, further facilitating her exploitation.

106. These indicators of human trafficking were conspicuous and readily apparent to any reasonably attentive employee at the Diamond Inn Motel. The prevalence and visibility of these warning signs, which align with widely recognized indicators within the hospitality industry, should have alerted properly trained staff to the ongoing exploitation at the Diamond Inn.

107. The failure to recognize and respond to these clear indicators of trafficking demonstrates a severe lapse in Diamond Inn's duty of reasonable care and adherence to the industry-standard practices for identifying human trafficking and halting their continued profit from the trafficking venture.

108. During her stays at the Mardi Gras, Plaintiff S.H. repeatedly encountered numerous staff members while exhibiting multiple, unmistakable indicators of being under the control of her trafficker—signs any reasonable employee, particularly within the hospitality industry, would recognize as trafficking. Despite these red flags being obvious and pervasive, staff deliberately ignored them and took no action.

109. On one occasion, Plaintiff S.H. directly disclosed her plight to a Mardi Gras security guard, telling him her trafficker had kicked her out of the room. It was freezing, she was dressed in minimal clothing, and she explicitly informed him that three other girls remained inside. Despite being confronted with this urgent disclosure and visible distress, the guard offered no assistance, failed to provide even basic aid, and did not notify law enforcement.

110. While trafficked at the Mardi Gras, Plaintiff S.H. was routinely heard crying out and screaming in pain while being beaten and abused in her room. The sounds of violence and distress carried through the property, yet no staff member intervened, no welfare check was attempted, and no call for help was made. Reports and complaints directed to the property went unanswered, further demonstrating Defendants' conscious disregard for Plaintiff's suffering.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

111. During her stay at the Mardi Gras, Plaintiff S.H.'s Trafficker implemented a methodical and well-established operational protocol, consistent with practices widely recognized within the illicit sex trafficking industry, such as:

a. An unusually high volume of individuals entered and exited Plaintiff S.H.'s room at frequent intervals;

b. Plaintiff S.H.'s Trafficker consistently refused housekeeping services, denying hotel staff entry to the room;

c. Plaintiff S.H.'s room exhibited an excessive quantity of used illicit drugs, prophylactics, soiled linens, and discarded clothing, indicative of commercial sexual activity;

d. Plaintiff S.H. was consistently accompanied by her Trafficker when entering the premises, displaying evident signs of distress, including evasive behavior, reticence, and visible fear;

e. Audible disturbances, including loud vocalizations and screams, emanated from Plaintiff S.H.'s room, suggestive of ongoing abuse and sexual assault;

f. Plaintiff S.H.'s Trafficker consistently utilized cash payments for room reservations at the Mardi Gras, a common practice in sex trafficking operations;

g. Plaintiff S.H.'s Trafficker routinely requested accommodations in secluded areas of the hotel, away from other guests;

h. Plaintiff S.H.'s Trafficker made frequent and excessive requests for fresh linens and towels;

i. An unusually large quantity of used prophylactics was consistently observed in Plaintiff S.H.'s Mardi Gras rooms;

j. Plaintiff S.H.'s Trafficker repeatedly instructed hotel staff not to disturb the room occupants;

k. Plaintiff S.H. was often observed wearing attire inappropriate for the prevailing weather conditions; and

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

l. Instances of loitering and solicitation by Plaintiff S.H. were observed at Mardi Gras.

112. Consequently, Defendants had actual knowledge—or, at minimum, constructive knowledge—that Plaintiff S.H. was being trafficked on its property at the Mardi Gras. The pervasive and obvious indicators she displayed matched well-documented warning signs of trafficking that are widely recognized across the hospitality industry, which Defendants are charged with knowing and addressing.

113. Instead of recognizing and responding to these red flags, employees and/or agents of Mardi Gras exacerbated the harm by placing Plaintiff S.H. in rooms isolated from other guests. This conscious choice further concealed her abuse and directly facilitated her trafficker's ability to control, exploit, and profit from her.

114. The indicators of Plaintiff's trafficking were not subtle—they were conspicuous, repeated, and readily apparent to any reasonably attentive employee. Their visibility, consistency, and alignment with industry-recognized warning signs made it impossible for properly trained hospitality staff to miss. Yet Mardi Gras staff and management ignored these signs and chose inaction, allowing Plaintiff's ongoing exploitation to continue unchecked.

115. The failure to recognize and respond to these clear indicators of trafficking demonstrates a severe lapse in Mardi Gras' duty of reasonable care and adherence to the industry-standard practices for identifying human trafficking and halting their continued profit from the trafficking venture.

**<u>DEFENDANTS KNOWINGLY ENABLED AND PROFITED FROM THE SEX TRAFFICKING OF PLAINTIFF</u>**

116. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

117. Defendants, and each of them, played a direct, substantial, and indispensable role in facilitating the sex trafficking of Plaintiff S.H. at their properties.

118. Defendants, and each of them, knowingly derived financial benefit from the repeated trafficking of Plaintiff.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

119. Defendants, and each of them, provided rooms, Wi-Fi, and other services to Plaintiff's trafficker despite actual knowledge—or, at minimum, constructive knowledge—that their properties, including the Diamond Inn Motel and Mardi Gras, were widely utilized for sex trafficking.

120. Defendants, and each of them, benefited from the steady income generated by Plaintiff's Trafficker and their purchasers. Defendants profited from every room rented by Trafficker and purchasers where Plaintiff were harbored for sex trafficking.

121. Defendants, and each of them, profited from the steady revenue generated by Plaintiff's trafficker and the buyers who purchased her for sex, collecting payment for every room where Plaintiff was harbored, sold, and repeatedly exploited.

122. Employees, agents, and staff of Defendants—including front desk personnel who directly interacted with Plaintiff and her trafficker—either knew, or in the exercise of basic care should have known, that Plaintiff displayed multiple obvious and well-recognized indicators of sex trafficking.

123. Given Defendants' longstanding access to information such as police reports, prior criminal activity, guest complaints, news coverage, and public online reviews describing pervasive prostitution and trafficking at their properties, Defendants had both actual and constructive knowledge of Plaintiff's trafficking, yet chose willful blindness and inaction.

124. Defendants, and each of them, knew or should have known of Plaintiff S.H.'s trafficking occurring at the Diamond Inn Motel and Mardi Gras, considering the city's reputation for sex trafficking. [24] [25] [26]

125. Defendants, and each of them, knew or should have known of Plaintiff's trafficking occurring at the Defendants' properties, due to the various clear signs of trafficking.

---

[24] Jacquelyn Gray, *Why Sex Trafficking is Such a Big Problem in Las Vegas*, A&E, (last visited April 15, 2025), https://www.aetv.com/real-crime/sex-trafficking-in-las-vegas/

[25] Alyssa Bethencourt, *Las Vegas is a hotspot for human trafficking, here's how to spot signs*, KTNV-13, ABC, (last visited April 15, 2025), https://www.ktnv.com/news/las-vegas-is-a-hotspot-for-human-trafficking-heres-how-to-spot-signs/

[26] Stephanie Overton, *Las Vegas police arrest more than 70 in sex trafficking operation during Grand Prix week*, Channel 8 News, CBS, (last visited April 15, 2025), https://8newsnow.com/news/local-news/las-vegas-police-arrest-more-than-70-in-sex-trafficking-operation-during-grand-prix-week/

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

126. Defendants, and each of them, had multiple opportunities to stop the Trafficker who victimized Plaintiff S.H. Instead, Defendants failed to take reasonable measures to stop profiting from the sex trafficking on their properties. Defendants' systematic willful blindness to the situation enabled and encouraged sex trafficking, and they financially benefited from the ongoing exploitation of Plaintiff.

127. Defendants, and each of them, continued to enjoy financial gain from their reputation for privacy, discretion, and their facilitation of commercial sex, knowing that these activities directly contributed to the trafficking of Plaintiff.

128. Defendants, and each of them, failed to take any meaningful steps to alert law enforcement, intervene in situations involving Plaintiff's trafficking of which they knew or should have known, and failed to implement reasonable security measures to identify and to prevent their profiting from the human trafficking on their properties, including the sex trafficking of Plaintiff.

129. Defendants, and each of them, maintained these deficiencies intentionally to maximize profits, including by:

a. Reducing the cost of training employees, managers, and staff on how to identify human trafficking and sexual exploitation, and what steps should be taken when trafficking is suspected;

b. Failing to refuse room rentals or report guests to law enforcement, even when such guests were identified as likely sex traffickers or purchasers of sex, in order to maximize room occupancy and corresponding profits;

c. Cutting security costs by not employing qualified security personnel or maintaining proper video surveillance systems to monitor and combat human trafficking;

d. Failing to enforce proper policies and procedures to prevent and report human trafficking, including not holding accountable hotel staff or managers who were complicit in facilitating trafficking activities.

130. Despite having access to extensive information regarding sex trafficking indicators and the conspicuous signs of Plaintiff's exploitation at the Defendants' properties, Defendants,

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

and each of them, failed to implement appropriate measures to intervene and prevent their profiting from the trafficking of Plaintiff. This inaction persisted despite widespread industry awareness of trafficking risks, publicly available guidelines for prevention, and the presence of numerous red flags that aligned with recognized indicators of human trafficking within the hospitality sector.

131. Defendants, and each of them, consistently failed to take necessary actions to prevent their profiting from the exploitation occurring at their properties. Specifically, Defendants failed to:

a. Mandate comprehensive training for employees and managers on identifying signs of human trafficking and sexual exploitation;

b. Analyze data on criminal activity and customer reviews indicating trafficking at their properties, and take corrective actions to address these issues;

c. Collect and utilize vast amounts of data from their locations for marketing purposes but fail to apply the same data to combat trafficking in their hotel;

d. Refuse room rentals or report suspicious guests to law enforcement, prioritizing maximum occupancy rates over the safety of trafficking victims;

e. Monitor and track guest wireless network activity for signs of illicit commercial sex or human trafficking-related digital activity;

f. Implement adequate security measures, such as qualified security personnel and appropriate cybersecurity, to combat trafficking and sexual exploitation;

132. Defendants' deliberate failure to intervene and its ongoing facilitation of sex trafficking at their properties directly enabled the continued victimization of Plaintiff and their continued profits from that victimization.

133. Defendants, and each of them, knew or should have known of the persistent sex trafficking occurring within their establishments. Instead of implementing prompt and effective measures to combat this crisis, they deliberately turn a blind eye to the blatant signs of exploitation. This willful ignorance allows them to continue profiting from room rentals clearly used for illicit purposes. By failing to address this issue, Defendants prioritized their financial

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

gains over the safety and well-being of trafficking victims, effectively enabling the continuation of these criminal activities on their premises.

134. As a result, Plaintiff has suffered severe emotional distress, humiliation, mental anguish, and physical pain and suffering, as well as a substantial loss of enjoyment of life. Furthermore, Plaintiff has incurred and will continue to incur medical expenses, attorney's fees, lost wages, diminished earning capacity, and punitive damages, all in an amount to be determined at trial.

**FIRST CLAIM FOR RELIEF**

**(Violations of 18 U.S.C 1595 ("TVPRA"))**

**Against all Defendants**

135. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

136. Plaintiff S.H. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and are entitled to bring a civil action under 18 U.S.C. § 1595.

137. Defendants, and each of them, are liable under 18 U.S.C. § 1595(a) because in the ways described above, Defendants knowingly or recklessly participated in harboring, maintenance, and/or other acts in furtherance of sex trafficking, including the sex trafficking of Plaintiff. Defendants knowingly benefitted, by receiving financial and other compensation, through their participation in a venture that they knew or were reckless in not knowing involved the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits.

138. The acts, omissions, and commissions, of Defendants, and each of them, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants had a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA. At all relevant times, Defendants failed to behave as reasonably diligent corporations and breached this duty through their participation in the harboring, maintaining, soliciting, and

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

advertising Plaintiff and her trafficker for the purpose of commercial sex induced by force, fraud, or coercion.

139. Defendants, and each of them, knew or should have known of the persistent sex trafficking occurring within their establishments. Instead of implementing prompt and effective measures to combat this crisis, they deliberately turn a blind eye to the blatant signs of exploitation. This willful ignorance allows them to continue profiting from room rentals clearly used for illicit purposes. By failing to address this issue, the hotels prioritize their financial gains over the safety and well-being of trafficking victims, effectively enabling the continuation of these criminal activities on their premises.

140. Defendants, and each of them, benefited as a result of these acts, omissions, and/or commissions by renting rooms and providing internet/Wi-Fi to traffickers and customers, keeping operating costs low, maintaining the loyal customer base that fuels the supply and demand of sex trafficking, and limiting mandatory regulations. Moreover, on each occasion they received payment for rooms, Defendants directly benefited from the sex trafficking of Plaintiff when they knew or should have known violations of §1591(a) were occurring.

141. Defendants, and each of them, have participated in a hotel business venture and/or a sex trafficking venture in which they knowingly benefited from the commercial sex trafficking of Plaintiff S.H., who was trafficked as a direct result of Defendants' acts, omissions, and/or commissions. In order to maintain the loyalty of the segment of their customer base involved in the sex trade, Defendants continued renting rooms to traffickers, failing to intervene despite obvious signs of trafficking. Defendants' failure to properly train and supervise their agents and employees, coupled with their disregard for the welfare of their guests, enabled the continued exploitation of Plaintiff. The Defendants and Plaintiff's trafficker engaged in a venture in which all were necessary parties to obtain the profits from the sex trafficking of Plaintiff.

142. Moreover, Defendants, and each of them, knowingly and directly benefited from the sex trafficking of Plaintiff S.H. on each occasion they received payment for rooms where Plaintiff was sexually exploited by guests of the hotel.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

143. The conduct of Defendants, and each of them, as set forth above and with respect to this cause of action, was done with a conscious disregard for Plaintiff's rights and safety, fully aware of the devastating and probable consequences of their conduct. This conduct included the willful and deliberate failure to act to prevent those consequences, justifying an award of punitive damages. Specifically, despite Defendants' knowledge of widespread sex trafficking occurring at the Diamond Inn and Mardi Gras, Defendants made the deliberate decision to continue profiting from the exploitation of vulnerable individuals. Their failure to implement or enforce any meaningful policies to prevent trafficking and the profits from trafficking, failure to train or supervise employees, and complete indifference to the obvious signs of exploitation on their premises demonstrate a deliberate, reckless, and malicious disregard for Plaintiff's well-being. Defendants knew of the harm being caused, failed to take corrective action, and instead chose to perpetuate the suffering of Plaintiff for their own financial gain. This egregious and malicious conduct justifies the imposition of punitive damages, as Defendants' actions were not only intentional but meant to foster a system of exploitation.

144. The conduct of Defendants, and each of them, as set forth above, and with respect to this cause of action exhibited implied malice towards Plaintiff's rights and safety. This conduct was despicable and demonstrated a conscious disregard for Plaintiff's rights and safety, warranting an award of punitive damages. Specifically, was fully aware, or should have been fully aware, that sex trafficking was rampant at the Diamond Inn and Mardi Gras, and yet they chose to do nothing to prevent it. They ignored clear signs of trafficking, failed to intervene in the face of overwhelming evidence, and continued to allow the exploitation of vulnerable individuals to take place under their roof, all while reaping the financial rewards. This behavior, done with malice and a total lack of concern for the human suffering occurring on their premises, warrants the imposition of punitive damages to punish Defendants for their despicable conduct and deter others from engaging in similar conduct in the future.

145. The conduct, actions, and omissions by Defendants, and each of them, was negligent, grossly negligent, intentional, willful, wanton, oppressive, malicious, and done with conscious disregard to the rights and safety of Plaintiff.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

146. The totality of the actions and omissions of Defendants, and each of them, demands punitive damages of a magnitude sufficient to punish this egregious conduct and deter similar behavior across the hospitality industry. The scale of these damages should reflect the prolonged nature of Defendants' misconduct, spanning years of inaction and willful ignorance, the severity of harm inflicted on multiple victims due to Defendants' failure to act, the substantial profits Defendants repeated from the complicity in human trafficking, and the need to send a clear message to the entire hospitality industry that such conduct will not be tolerated and will result in severe financial consequences.

147. The necessity for exemplary punitive damages is further amplified by the unique position of Las Vegas, Nevada in the hospitality industry. As the hospitality capital of the world, Las Vegas sets standards and practices that reverberate throughout the global hospitality sector. The high concentration of hotels and casinos in Las Vegas creates an environment where unchecked trafficking can proliferate rapidly, magnifying the impact of corporate negligence. Therefore, punitive damages must be of a magnitude that not only punishes Defendants but also serves as a watershed moment for the entire hospitality industry, compelling immediate and comprehensive reforms in Las Vegas that will set new global standards for combating sex trafficking in hotels.

148. After escaping her trafficker, Plaintiff S.H. has spent significant time and effort trying to rebuild her life, which was violently torn away. The lasting trauma from her captivity and abuse continues to affect them, serving as a constant reminder of the Defendants' role in enabling their exploitation.

149. As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiff S.H. has suffered severe emotional distress, humiliation, mental anguish, psychological trauma, and physical pain and suffering, and a significant decrease in their ability to enjoy life, all in excess of Fifteen Thousand Dollars ($15,000.00).

150. As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiff S.H., has incurred medical expenses for the treatment of their injuries and may require ongoing future treatments necessitated by the harm they suffered. The exact amount of

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

such past and future damages is unknown at this present time, but Plaintiff alleges that they have suffered and/or will suffer damages in excess of Fifteen Thousand Dollars ($15,000.00).

151. As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiff S.H., has suffered loss of income and/or loss of earning capacity, all in excess of Fifteen Thousand Dollars ($15,000.00).

152. The actions and inactions of Defendants, and each of them, their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

153. As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiff S.H. has had to retain the services of the law offices of CHRISTIAN MORRIS TRIAL ATTORNEYS to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred herein.

**WHEREFORE**, PLAINTIFF S.H., prays for judgment against Defendants as follows:

1. For general and special damages in excess of $75,000.00 for medical expenses, pain and suffering, permanent injury, disfigurement, anguish and afear, and lost wages.
2. For punitive damages;
3. For any and all pre- and post-judgment interest as permitted by law;
4. For reasonable attorney's fees and costs;
5. For such other and further relief as the Court Deems proper.

///

///

///

///

///

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

**DEMAND FOR JURY TRIAL**

Pursuant to F.R.C.P. 38, Plaintiff hereby demands trial by jury on all issues raised in this action.

DATED this 4th day of August 2026.

CHRISTIAN MORRIS TRIAL ATTORNEYS

/s/ *Sarah E. DiSalvo*

CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
*Attorneys for Plaintiff*